# IN THE COURT OF APPEALS OF IOWA

No. 22-2106
Filed March 8, 2023

**IN THE INTEREST OF D.T.,**
**Minor Child,**

**R.T., Father,**
     Appellant,

**K.B., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Annette F. Martin, Cedar Rapids, for appellant father.

Kristin L. Denniger, Mount Vernon, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Julie Trachta of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

"No one has drug tested, nobody has completed treatment, no one has been in therapy to address anything. This case has not progressed in any way from the beginning. . . . I believe we are in a worse position today than when the case opened." Such was the testimony of the Iowa Department of Health and Human Services case manager in this termination appeal. Parents Katherine and Reginald separately appeal the order terminating their parental rights to eight-month-old D.T.[1] Katherine challenges the statutory grounds for termination, argues it was not in D.T.'s best interests and a permissive factor applies, and requests more time. Reginald challenges the statutory ground for termination of his rights and argues it was not in D.T.'s best interests. He also argues termination is detrimental to D.T. because she has a strong bond with her parents.

As reflected by the case manager's testimony, the record evidence supported termination, and it is in the child's best interests. So we affirm.

**I. Facts and Prior Proceedings**

D.T. was born in March 2022. At birth, her urine tested negative for drugs, but later meconium and umbilical cord screens were positive for methadone. When D.T. was one month old, Katherine passed out at a methadone clinic and

---

[1] We review termination orders de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result on legal questions. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.* Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination). The State has the burden to show clear and convincing evidence that the requirements for termination have been met. *L.B.*, 970 N.W.2d at 313 (explaining the three-step analysis for termination of parental rights).

admitted using methamphetamine. She told an ambulance crew she had been high for the last four days. D.T. was removed from her custody and adjudicated a child in need of assistance. Hair testing showed D.T. had ingested methamphetamine and heroin. The medical report said this showed "ingestion since birth."

D.T.'s removal was not Katherine's first encounter with the department. She has five other children not in her custody; her parental rights had been terminated to two of them. Her involvement with the department began in 2008 when a child abuse report was founded for failure to supervise because of illegal drug use. That investigation marked the first of five founded reports of child abuse, most involving her addiction. The same concerns pervade this case and apply to both parents.

After D.T.'s adjudication, the juvenile court ordered Katherine and Reginald to take drug tests and complete substance-abuse treatment. Katherine participated in only one of nearly thirty scheduled tests. And that one was positive for methamphetamine. During this CINA case, she tried three different treatment programs, but did not complete them.[2] Reginald at first denied abusing drugs, but later admitted he has an extensive substance-abuse history. He also provided just one drug screen—a sweat patch in spring 2022 positive for methamphetamine. Although he completed a substance-abuse evaluation in September and started outpatient treatment, he told the family support specialist that he continued to use

---

[2] Katherine was discharged from the first program for possessing contraband. Later she established outpatient services but was inconsistent in her participation. In October, she tried to enter a Fort Dodge treatment facility. But when she got there, they were short staffed and she could not be admitted. Most recently, the department helped her find an inpatient center, but the center would not take her insurance.

methamphetamine and had not discussed his use with his counselor. And he did not consistently attend treatment. At the termination hearing in November, the service provider testified that Katherine reported lapsing on heroin that month and Reginald reported using methamphetamine in September and October. On top of these substance-abuse concerns, Katherine also has mental-health needs but has not completed an ordered evaluation.

The parents' efforts at visitation have been somewhat more successful. The social worker identified a bond between D.T. and her parents. But they have not moved beyond supervised visitation because of continued safety concerns. The service provider reported that although the parents interacted positively and enjoyed their time with D.T., they also argued between themselves and were often late or skipped visitations—even at their own home. Most troubling, both parents showed signs of ongoing substance abuse. They struggled to stay awake, and Katherine had visible track marks on her arms.

Turning to the child: D.T. is a healthy and, by all reports, happy infant. She has no serious medical concerns. She has lived in three foster homes and is not currently in a preadoptive placement. But the case manager testified that the department did not expect finding an adoptive placement would be difficult.

After the November hearing, the juvenile court terminated Katherine's parental rights under Iowa Code section 232.116(1) (2022), paragraphs (g) and (h), and Reginald's rights under paragraph (h). The parents appeal separately.

## II. Analysis

### A. Statutory Grounds

Katherine challenges the termination under paragraphs (g) and (h). We focus on paragraph (h). *See* Iowa Code § 232.116(1)(h) (requiring proof of child's age and adjudication, removal for the last six straight months, and that child cannot be returned to parent's custody at the present time); *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). Katherine contends the State did not offer clear and convincing evidence that D.T. cannot be returned to her custody "if the right supports [are] in place" for her to gain sobriety. She claims that "if she were properly connected to appropriate inpatient treatment," that would allow D.T. to reside with her.

Trouble is, her contention overlooks key language in the statute. The statutory inquiry is whether reunification is possible "at the present time," meaning at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Katherine condedes that right now she cannot safely parent D.T. without supports in place. And the record shows that she has strugged to be a stable, sober parent even with those supports. Since D.T.'s removal, Katherine has not complied with drug testing or completed a treatment program. And taking a broader view, as the case manager noted, Katherine has continued to grapple with addiction despite receiving services for four of the last six years.

Katherine recognizes "the path to sobriety is not an easy one, nor is it free of the pitfalls of relapse." She insists that "she is willing to keep the case open as

long as it takes" to prove her sobriety. But such an indeterminate wait will not work for a young child like D.T. *See D.W.*, 791 N.W.2d at 707. "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *Id.* Once those timelines run, we view the situation with urgency. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Katherine did not show progress in the allotted time, so we affirm termination under paragraph (h).

Reginald also challenges termination under paragraph (h) but fails to specify which element was not met. *See* Iowa Code § 232.116(1)(h). He asserts that he completed a mental-health evaluation, participated in some substance-abuse treatment, was employed throughout the case, interacted well with D.T. during their visits, and has a strong bond with her. Based on those assertions, we assume he contests the court's finding that D.T. cannot be returned to his custody presently. *See id.* § 232.116(1)(h)(4). We commend Reginald's efforts. Yet too many safety concerns remain to place D.T. in his custody. He used methamphetamine throughout the case and lacked stable housing.[3] We affirm the district court's conclusion on this statutory ground.

## B. Best Interests

Next, the parents argue termination is not in D.T.'s best interests. *See* Iowa Code § 232.116(2). We must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental and emotional condition and needs of the child." *Id.*

---

[3] When asked at the termination trial where he was living, Reginald responded: "Here and there, a hotel, family."

Given their unresolved drug addictions, neither parent can meet D.T.'s needs. Even in fully supervised visitations they could not remain awake—creating safety concerns. Moving toward a permanent, a stable home is in D.T.'s best interests.

### C. Parent-Child Relationship

Both parents argue we should forgo termination because of their strong bond with D.T. *See* Iowa Code § 232.116(3)(c) (allowing court to forgo termination if parent shows it would harm child due to the strength of parent-child relationship); *see In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) (noting factors under section 232.116(3) are not mandatory). The case manager confirmed that D.T. knew her parents at visits and had bonded with them. But the parents have not shown that their relationships with the child are so close that severing ties would harm her. We decline to apply this permissive exception.

Katherine also requests more time to work toward reunification, asserting section 232.116(3)(c) "reflects a legislative intent to give the parents additional time" to preserve a close relationship. To give a parent more time, the court must find the need for removal "will no longer exist at the end" of the extension. Iowa Code § 232.104(2)(b). We see no evidence of that kind of progress here, so a delay in permanency is not warranted.

## III. Conclusion

Finding no grounds to overrule the juvenile court's decision, we affirm termination of the parental rights of both Katherine and Reginald.

**AFFIRMED ON BOTH APPEALS.**